**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

Civil Action No: 3:24-cv-00472-KAC-DCP
Judge Crytzer

**MOTION TO DISQUALIFY REPRESENTATION BY THE UNIVERSITY OF TENNESSEE OFFICE OF GENERAL COUNSEL**

Plaintiff Stuart N. Brotman("Brotman"), by and through counsel, submits this Motion to Disqualify Representation by The University of Tennessee Office of General Counsel ("OGC"), as set forth below.

This Motion covers two separate claims: 1) disqualification of the OGC from representing Joseph Mazer ("Mazer") and Courtney Childers ("Childers") in their personal capacities; and 2) disqualification of the OGC from representing The University of Tennessee as a separately named Defendant, which includes any actions undertaken by Mazer and Childers in their official capacities as University employees.

## The Court Has Authority to Act on this Motion

1. The power to disqualify an attorney from a case is "incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Kitchen v. Aristech Chem.,* 769 F. Supp. 254, 256 (S.D. Ohio 1991) (quoting *Ex Parte Burr,* 22 U.S. 529, 531, 6 L.Ed. 152 (1824)).

2. A federal district court's authority to disqualify attorneys derives from two sources. First, attorneys are governed by the local rules of the court in which they appear. *Bartech Indus. v. Int'l Baking Co*., 910 F. Supp. 388, 392 (E.D.Tenn.1996).

3. Second, because motions to disqualify affect a party's substantive rights, such motions are decided by applying standards developed under federal law. *Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1316 (3d Cir.1993). Generally, federal law has adopted the ethical rules promulgated by the Supreme Court in which the federal court sits (i.e., in this case, Tennessee) or announced by the national profession and embodied in the ABA Model Rules of Professional Conduct and the ABA Code of Professional

Responsibility. See *Cole v. Ruidoso Mun. Schs.,* 43 F.3d 1373, 1383 (10th Cir.1994); *In re Dresser Indus., Inc.,* 972 F.2d 540, 543, 544 (5th Cir.1992).

4. A Court ruling on this Motion for Disqualification of Counsel should be made prior to ruling on any dispositive motion, because the success of a disqualification motion has the potential to change the proceedings entirely. *Bowers v. Ophthalmology Grp.,* 733 F.3d 647 (6th Cir. 2013).

**The OGC's Request for Representation of Mazer and Childers in their Personal Capacities Lacks Statutory Authority**

5. On March 10, 2025, the OGC transmitted an email to Brotman regarding authorization for the OGC to represent Mazer and Childers in their personal capacities, separate from their official capacities as employees of The University of Tennessee.

6. The OGC's *Protections Against Liability Statement* makes clear that Mazer and Childers can be held personally liable in this case: "The immunity of state employees under Tennessee law has no effect in state or federal court actions for violation of the federal constitution or federal statutes. The United States Supreme Court has ruled that states cannot immunize their employees against liability under federal law. Therefore, University employees are subject to personal liability for both compensatory and punitive damages in certain kinds of federal civil rights actions. The most common federal civil rights actions against state employees in their personal capacities are based on alleged violations of the equal protection clause (class-based discrimination) and due process clause of the Fourteenth Amendment and the free speech clause of the First Amendment."

7. The OGC has not provided documentation regarding the representation request it made to the Tennessee Office of the Attorney General ("OAG'). Rather, it sent Brotman an undated letter from the OAG.

8. The OAG letter states: "You have requested that the University be allowed to represent two current employees, Dr. Joseph Mazer and Dr. Courtney Childers, in their individual (as well as official) capacities in the above-referenced proceedings. In accordance with Tenn. Code Ann. §§ 8-6-302 and 8-42-103, I am delegating to you and to the attorneys employed by the

University the authority to represent these individual defendants. This delegation does not include any appeal that may be filed."

9. The OGC's request to enable the Attorney General's delegation of the representational authority rests on the faithful application of the statutory provisions. The plain meaning of the statute, considering the facts presented in Brotman's Amended Complaint, does not support such a delegation request.

10. *Tenn. Code Ann. Section 8-42-103* provides:

(a) When a civil action for damages is commenced in any court by any person against any state employee as defined in this chapter for **any acts or omissions of the state employee within the scope of the employee's employment**, **except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain**, the attorney general and reporter has the discretion to provide representation to the employee. (emphasis added). Such representation may be provided by:

(1) The attorney general and reporter's assistants;

(2) Attorneys appointed by the attorney general and reporter; or

(3) Payment of reasonable compensation of counsel approved by the attorney general and reporter. Attorney's compensation, court costs, and other necessary incidental expenses in connection with the action shall be paid from the funds appropriated to the attorney general and reporter pursuant to this chapter. The method of providing representation is within the sole discretion of the attorney general and reporter. Notwithstanding any law to the contrary, the attorney general and reporter is specifically authorized to appoint attorneys and to determine their compensation to fulfill the purpose of this chapter.

11. Apparently, the OAG's delegation was made under (2) above. But there is no referenced assertion that Mazer and Childers, as state employees, were acting within the scope of their employment; even if they were, such delegation would be impermissible if it involved acts by them that were "willful" or "malicious."

12. Brotman's Amended Complaint sets forth in detail malicious and/or willful activities by Mazer and Childers that were undertaken in their personal capacities, outside their official capacities as University employees.

13. This means that based on the Amended Complaint, the OGC's request to the OAG for delegated representational authority for Mazer and Childers in their personal capacities was made without regard to satisfying statutory precondition(s). Accordingly, it merits the OGC's disqualification of personal representation of Mazer and Childers.

14. If the Court determines that the statutory requirements for this request were not met, it follows that the OGC cannot request a delegation to represent Mazer and Childers in their personal capacities. Instead, the OGC must decline such representation and allow Mazer and Childers to be represented by other counsel.

15. A disqualification Order by the Court would be consistent with the specified legal preconditions in the statute. It would allow for a substitution of selected counsel to be undertaken in a timely manner. Mazer and Childers would be able to retain personal counsel soon and would not experience prejudicial consequences.

16. Additionally, there would be little, if any, delay in the Court's activities to move ahead with next steps in this litigation.

17. If the OGC's disqualification on this ground is not ordered, however, the Court must ensure that the OGC's role is strictly limited within the statutory boundaries of Tenn. Code Ann. §§ 8-6-302, which require that the case remain under the direction and control of the attorney general and reporter, not the OGC.

**The OGC's Ethical Impropriety Merits Disqualification**

18. The " 'availability of both federal and state comprehensive disciplinary machinery' is unrealistic: it presumes (1) that the alleged violation will be reported to the disciplinary authority, (2) that the disciplinary authority will discipline violators, and (3) that it will do so in a way that stops and deters lawyers (both generally and specifically)." Kevin Swisher, The Practice and Theory of Lawyer Disqualification, 27 *Geo. J. Legal Ethics* 1, 57 (2014).

19. Consequently, "discipline or malpractice may not offer a remedy at all, much less a remedy equaling or rivaling disqualification. Given these practical challenges, the court may still need to perform its role in the internal regulation of the legal profession and disqualify counsel from further representation in the pending litigation. Because disqualification is a unique and effective remedy, discipline cannot fully replace disqualification." *Id.*

20. A motion to disqualify thus is the proper method for a party-litigant to bring an issue of conflict of interest or breach of an ethical duty to the court's attention. *Musicus v. Westinghouse Elec. Corp.,* 621 F.2d 742, 744 (5th Cir. 1980).

21. Local Rule 83.6 of this Court states: "The minimum standards of professional conduct before the Court include the Rules of Professional Conduct adopted by the State of Tennessee insofar as they relate to matters within the jurisdiction of this Court. Such rules are not exhaustive of the ethical standards the Court expects attorneys to meet. The Court has the obligation and responsibility to interpret and apply the [Rules of Professional Conduct] RPC and other rules and standards of conduct without being bound by the decisions of Tennessee courts, other courts, or agencies."

22. A lawyer's good faith, although essential in all his professional activity, is, nevertheless, an inadequate safeguard when standing alone. . . . The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case. *Emle Indus. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973).

23. According to its Mission Statement, "The Office of the General Counsel (OGC) at the University of Tennessee is a full-service team of highly experienced and knowledgeable attorneys and legal professional staff. **We consistently operate with integrity**…" (emphasis added). But the OGC's actions in this case starkly contradict that bold assertion.

24. Critically, the OGC contravened Tennessee Rules of Professional Conduct (RPC) Rule 1.1(d), which covers all lawyers in the OGC: "A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning, or application of the law."

25. Further, the RPC's discussion of Criminal, Fraudulent, and Prohibited Transactions states: "When the client's course of action has already begun and is continuing, the lawyer's responsibility is especially delicate. In some situations the lawyer may be permitted or required by Rule 1.6 to reveal the client's wrongdoing. See RPC 1.6(b)(1) and (c)(1). **In any case, however, the lawyer is required to avoid assisting the client, for example, by drafting or delivering documents that the lawyer knows are fraudulent or by suggesting how the wrongdoing might be concealed. A lawyer may not continue assisting a client in conduct that the lawyer originally supposed was legally proper but then discovers is criminal or fraudulent. The lawyer must, therefore, withdraw from the representation of the client in the matter.** (emphasis added). See RPC 1.16(a). In some cases, withdrawal alone might be insufficient. It may be necessary for the lawyer to give notice of the fact of withdrawal and to disaffirm any opinion, document, affirmation or the like. See RPC 4.1."

26. Brotman's Amended Complaint sets forth details regarding the OGC's efforts representing the University, designed to pressure Brotman to execute an involuntary resignation and retirement agreement. These efforts included the OGC's knowing deletion of mandatory provisions of the Older Workers Benefit Protection Act (OWBPA), which covers Brotman, given his age.

27. Mazer's powerful threat was clear--resign and retire under the threat of outright termination of Brotman's tenured full professorship. Childers was aware of this threat and did not object to it in any way.

28. On August 25, 2023, after an initial review of emailed [resignation and retirement] documents from Mazer, Brotman informed Mazer that the

acceptance deadline imposed by him would not enable Brotman to receive the 21-day review period specified in them, which is mandated by the OWBPA.

29. Accordingly, Brotman notified Mazer via email then that he would "need to have this 21-day review period] timeframe honored…" In an email response that same day, Mazer wrote, **"I have checked with the General Counsel's office. They didn't realize when they drafted the agreement that, from an academic operations perspective, we do not have the flexibility to wait 21 days. They have revised the agreement, which is attached, to remove the entire section related to the Older Workers Benefit Protection Act. So the provisions you mentioned are no longer in the agreement."** (emphasis added).

30. The OGC is comprised of various attorneys who are responsible for the legal affairs of The University of Tennessee. They include C. Ryan Stinnett, Rachel Powell, Katie Lane, Lela Young, Frank Lancaster, Mike Fitzgerald, Harold Pinkley, Walt Schuler, and Caitlyn Elam.

31. The OGC had actual knowledge of the OWPBA and its mandatory review provisions. It willingly participated in satisfying Mazer's request to have the OGC delete these provisions entirely in a revised agreement.

32. In doing so, the OGC attorneys clearly understood that its attorneys were acting to contravene the OWPBA.

33. The role of the OGC is satisfying Mazer's request by eliminating the required OWBPA provisions in a revised agreement violated the law. It compromised the legal integrity of its attorneys, as well.

34. Mazer and the University, represented by the OGC, singularly were focused on implementing a conclusive agreement for Brotman's speedy resignation and retirement, regardless of the OWBPA. They knowingly ignored affording Brotman the legal protection that the OWBPA requires.

35. The RPC's definitions provide further support for asserting that ethical impropriety by the OGC is at issue here. "(d) 'Fraud' or 'fraudulent' denotes an intentionally false or misleading statement of material fact, an

intentional omission from a statement of fact of such additional information as would be necessary to make the statements made not materially misleading, and such other conduct by a person intended to deceive a person or tribunal with respect to a material issue in a proceeding or other matter." "(j) 'Reasonably should know,' when used in reference to a lawyer, denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question."

36. By its actions, the OGC also violated Rule 2.1 of the ABA Model Rules of Professional Conduct, adopted by Tennessee in the RPC. This Rule requires legal counsel to provide "straightforward advice" and an "honest assessment," even when the advice involves "unpleasant facts and alternatives that a client may be disinclined to confront." Kevin H. Michels, *Lawyer Independence: From Ideal to Viable Legal Standard*, 61 Case W. Rsrv. L. Rev. 85, 112 (2010).

37. "Rule 2.1 is implicated when, in the course of (1) providing advice to the client; or (2) effecting nonadvocacy ends for the client, including attorney efforts to structure and effect client transactions, an attorney has (3) reason to suspect that the client's proposed conduct is criminal or fraudulent. With respect to the third element, the test is an objective one: when the facts and circumstances present reasonable grounds for concern or suspicion that the behavior in question might be wrongful, the attorney's obligations under Rule 2.1 attach. In such cases, the lawyer must employ her independent professional judgment to assess the propriety of the proposed client conduct and report her conclusions candidly to the client. When the lawyer is required to exercise independent professional judgment under Rule 2.1, the client cannot waive compliance with the Rule, although he retains the right to terminate the representation. In each instance, if the client refuses to allow counsel to undertake the actions necessary to satisfy Rule 2.1, then counsel must withdraw from the matter." *Id.* at 110-111.

38. "Rule 2.1 is designed to further the societal and third-party interests in reducing wrongful behavior, not to advance a client interest. Societal and third-party interests are not the client's to waive. Therefore, when the issue expressly or impliedly implicates wrongful behavior, the client's voice in controlling the scope of the representation under Rule 1.2(c)gives way to the demands of lawyer independence under Rule 2.1.The very nature of

'independent' judgment suggests that it is not subject to the direction (or caprice) of the client, including the client's insistence that it not be exercised." *Id.* at 110.

39. The OGC's unquestioned rapid agreement to delete key provisions of the OWBPA mandatory provisions at Mazer's insistence was a blatant disregard of the RPC ethical obligations. OGC's impropriety was more than apparent—it was actual.

40. Allowing the OGC to participate in perpetrating fraud, while at the same time allowing it to represent those at the University who it coordinated the fraud with, places a serious taint on the OGC's continued representation of the University, including Mazer and Childers in their official capacities as University employees.

41. This indelible taint, which directly impacts the Court's vital interest in the proper safeguarding of the judicial process, only can be remedied through a timely Court ruling that the OGC's representation disqualification should be ordered on this basis, as well.

42. Moreover, if the OGC is disqualified due to ethical impropriety, there will be no impediment for the University, including Mazer and Childers (acting in their official capacities as University employees) to retain selected outside counsel expeditiously--enabling the case to remain on track with no real prejudice to these parties, and without the creation of undue delay for the Court's activities.

**Court Considerations in Ruling on this Motion**

43. In filing this Motion, Brotman recognizes that "courts heavily scrutinize the movant's diligence in bringing the disqualification issue to the court's attention." Swisher, *supra*, at 22-24.

44. Brotman is following "a key piece of advice for movants (and their lawyers) considering whether to file a motion to disqualify...do so promptly." *Id.* at 24.

45. The proper mechanism for bringing alleged unethical conduct to the attention of the court is through a motion to disqualify. *Melamed v. ITT Continental Baking Co.,* 592 F.2d 290, 294 (6th Cir. 1979).

46. Moreover, "there is less reason to suspect tactical motivations behind disqualification motions. . . . Under the *Firestone [Tire & Rubber Co. v. Risjord, 449 U.S. 368(1981)]* regime…disqualification motions are not appealable prior to final judgment, thus severely limiting any advantages a party might have achieved through delay." *In re Am. Airlines*, 972 F.2d 605, 611 (5th Cir. 1992) (citations omitted).

47. "Disqualification's 'intervention' is not always as invasive or unjustified as some have implied. …The court…has an undeniable and repeatedly declared power to police its own proceedings. Thus, a court can legitimately take protective action when, at a minimum, the violation before it affects the proceedings or will almost certainly do so in the future. If disqualification is the only remedy that could effectively eliminate or mitigate this negative impact on the proceedings, disqualification is on rock-solid ground." Swisher, *supra*, at 53.

48. Additionally, "[w]hen the attorney's continued representation of a client poses a substantial risk of taint to the trial, disqualification is an appropriate remedy because neither an award of damages or disciplinary sanction is effective to prevent trial taint. Both serve only to punish the attorney's misconduct after the fact. While an order of disqualification in a case that involves substantial risk of trial taint may well impose costs on the client and the legal system, these costs are unavoidable to maintain the integrity of the trial process." Nathan M. Crystal, *Disqualification of Counsel for Unrelated Matter Conflicts of Interest*, 4 Geo. J. Legal Ethics 273, 287(1990).

49. Brotman recognizes that the Court may apply a balancing test in considering whether this Motion is appropriate and preferable to automatic counsel disqualification.

50. [T]he courts must balance the interest of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation. *General Mill Supply Co. v. SCA Servs., Inc.,* 697 F.2d 704, 711 (6th Cir. 1982).

51. In deciding this Motion, the Court can exercise its judgment with an eye toward "upholding the highest ethical standards of the profession, protecting the interest of the litigants in being represented by the attorneys of their choosing, protecting the loyalty and confidences [of clients], and the overriding societal interests in the integrity of the judicial process." *Bartech Indus. v. Int'l Baking Co.,* 910 F. Supp. 388, 392 (E.D. Tenn.1996) (citing *Manning v. Waring, Cox, James, Sklar and Allen,* 849 F.2d 222, 224 (6th Cir. 1988) (further citations omitted).

52. But as the Court guards against abuse using a motion to disqualify, it "should not weigh the competing issues with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing the appearance of impropriety . . . resolve all doubts in favor of disqualification."*, Gracey Gen. P'ship v. City of Clarksville,* 3:23-cv-01189 (M.D. Tenn. Jul. 24, 2024), 10-11, quoting *Seaman Corp.*,643 F.Supp.3d (internal quotation marks and citation omitted).

53. A prudent approach is "to consider the facts and circumstances of each case, including the particulars of the violation itself, in determining the harsh sanction of disqualification is warranted." *Research Corp. Technologies v. Hewlett Packard Co*., 936 F. Supp. 697, 703 (D. Ariz. 1996).

54. Although the Court need not hold an evidentiary hearing to reach its decision, it must satisfy itself that an adequate evidentiary record exists, permitting later appellate review. *General Mill Supply Co. v. SCA Servs., Inc.,* 697 F.2d 704, 710 (6th Cir.1982)).

55. Accordingly, since this case is in its early stages, prior to discovery and depositions, the Court should conduct an expedited in camera review of requested Defendant documents to supplement the facts presented in the Motion.

Brotman demands the following relief:

1. A Court Order disqualifying the OGC from representing Mazer and Chiders in their personal capacities.

2. A Court Order disqualifying the OGC from representing The University of Tennessee, including Mazer and Childers in their official capacities as University employees.

3. All other relief that the Court deems appropriate and proper.

Respectfully submitted,

/s/ Stuart N. Brotman
Attorney for Plaintiff
*Pro Hac Vice* Admission

1922 Lyons Bend Road
Knoxville, TN 37919
snbrotman@gmail.com

**Certificate of Service**

I hereby certify that on March 20, 2025, a copy of the foregoing Motion to Disqualify Representation by The University of Tennessee Office of General Counsel was filed

electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

s/ Stuart N. Brotman
(*Pro Hac Vice* Admission)
Address:1922 Lyons Bend Road Knoxville, TN 37919
Phone number: 865/282-2136