UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| STUART N. BROTMAN, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:24-CV-472-KAC-DCP |
| | ) | |
| UNIVERSITY OF TENNESSEE, et al.; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is (1) the Motion to Dismiss filed by Defendants the University of Tennessee, Joseph Mazer, and Courtney Childers [Doc. 15]; and (2) Plaintiff Stuart N. Brotman's Motion to Amend [Doc. 34].  For the reasons below, the Court grants the Motion to Dismiss and denies Plaintiff leave to further amend his First Amended Complaint.

## I.      Background

Defendant the University of Tennessee ("UT") "is a State institution of higher education" located in Knoxville, Tennessee [Doc. 7 ¶¶ 1, 2].  Plaintiff is "a tenured full professor in" UT's "College of Communication and Information" ("CCI") [*Id.* ¶ 1].  He is also a licensed lawyer who appears as "attorney-of-record, admitted by this Court *Pro Hac Vice*" representing himself in this action [*See* Docs. 24 at 6; 6].  *See Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 663 (6th Cir. 2008) (concluding that it was "not an abuse of discretion" to deny attorneys proceeding *pro se* "special consideration on the basis of their *pro se* status").  At all times relevant, Plaintiff was at least sixty (60) years old [*See* Doc. 7 ¶¶ 11, 56].

Plaintiff "was selected in 2015 for appointment to the Howard Distinguished Endowed

Professorship" in the CCI at UT [*Id.* ¶¶ 30, 34]. Plaintiff joined UT's faculty in 2016 [*Id.* ¶ 35]. His salary started at "one hundred eighty thousand dollars" ($180,000) "per academic year" [*Id.* ¶ 34]. The "Board of Trustees" granted Plaintiff tenure "February 23, 2016" [*Id.* ¶ 36].

At relevant times, Defendant Mazer was Dean of the CCI [*Id.* ¶ 4]. During the relevant time, Defendant Childers was "Interim Director of CCI's School of Journalism and Media" [*Id.* ¶ 5]. In this role, she "reported directly to Mazer" [*Id.* ¶ 68]. And she served as Plaintiff's "immediate direct supervisor" [*Id.* ¶ 148].

In May "2022," Mazer sent Plaintiff a "letter indicating that" Plaintiff would lose the "title of Distinguished Professor" and that Plaintiff's "salary" "would be reduced by $35,400 annually," to "take effect on August 1, 2022" [*Id.* ¶¶ 53, 54]. This change was due to a "revised gift agreement between the donor" endowing the professorship and the UT Foundation [*Id.* ¶¶ 45, 46].

Around June 2022, Defendant Mazer met with Plaintiff and discussed "the possibility" of Plaintiff "requesting a permanent separation from" UT "under its Voluntary Retirement Program" ("VRP") [*Id.*¶¶ 54, 56]. The VRP is "restricted to senior faculty members who were at least 60 years old" [*Id.*]. Plaintiff told Mazer that "he would not be pursuing" the offer [*Id.* ¶ 63].

In March 2023, Plaintiff requested accommodations "under the ADA" through UT's "Office of Equity and Diversity" ("OED") due to a "serious medical condition" [*Id.* ¶¶ 65, 67]. Childers contacted Plaintiff "to discuss the information" relevant to his request [*Id.* ¶ 68]. Plaintiff "explained" to Childers that he "might" need accommodations "for the upcoming fall 2023 semester" [*Id.* ¶ 70]. In August 2023, the OED "requested" "updated information" regarding Plaintiff's medical condition and need for accommodations [*Id.* ¶ 72]. That month, "Childers informed Brotman in a Zoom call that pending this updated information, she would not permit Brotman to teach two scheduled courses remotely in the fall semester 2023" [*Id.* ¶ 73]. But

2

"Childers indicated that she had no discretion since the matter was within the OED" [*Id.* ¶ 74]. That is, "OED exclusively could decide for the University any ADA reasonable accommodation request" and "neither Childers nor Mazer would be making this decision" [*Id.*].

Thereafter, on "August 23," Mazer "presented a detailed 'voluntary' retirement package" to Plaintiff [*Id.* ¶ 80]. Mazer "indicated" that "acceptance of the package would 'eliminate the likelihood of termination based on negative feedback regarding teaching'" [*Id.* ¶ 84]. "Childers was aware of Mazer's threat and did not object" [*Id.* ¶ 89]. Plaintiff informed Mazer "that the acceptance deadline imposed by Mazer would not enable Brotman to receive the 21-day review period specific in them, which is mandated by the OWBPA [Older Workers Benefit Protection Act] that covers Brotman, given his age" [*See id.* ¶ 90]. Plaintiff rejected the package and noted that "he would not 'waive any of the rights accorded me [Plaintiff] under the'" OWBPA [*Id.* ¶ 100].

In September 2023, Mazer asked Plaintiff "to accept another 'voluntary' retirement package" [*Id.* ¶ 104]. Mazer told Plaintiff that accepting the package would "'eliminate the likelihood of termination based on negative feedback regarding teaching'" and "'eliminate[] the need for medical documentation through the [OED] accommodation process'" [*Id.* ¶¶ 106-107 (alteration in original)]. This package included a "21-day review" period but allegedly "did not fully comply with other OWPBA requirements" [*Id.* ¶ 110]. The First Amended Complaint does not specifically identify these failures [*See* Doc. 7]. Plaintiff declined the proposal.

"On October 4, 2023, the OED approved Brotman's fall 2023 semester request for remote teaching as an ADA reasonable accommodation" [*Id.* ¶ 112]. Mazer sent an email to Plaintiff indicating that Mazer "approved the OED-recommended accommodation, allowing" Plaintiff to "teach remotely for the remainder of the semester" [*Id.* ¶ 119].

In October 2023, Childers submitted "an Annual Performance and Planning Review

3

('APPR') of Brotman to Mazer" [*Id.* ¶ 122].  It contained a vulgar comment from a student to which Plaintiff objected:  "For the love of god find someone else to teach this class because this old fuck is not able to function as a competent professor any more [sic]" [*See id.* ¶¶ 122, 124].  "Mazer endorsed Childers's APPR evaluation by accepting it without reservation" [*Id.* ¶ 123].

At the time the operative First Amended Complaint was filed, Plaintiff was "undergoing another APPR during the 2024-2025 academic year" [*Id.* ¶ 127].  "As CCI dean, Mazer makes recommendations about a faculty member's annual performance review and potential salary and benefit increases" [*Id.* ¶ 127].  "Mazer continues to play a central role in Brotman's APPR, providing a mandatory recommendation and supporting reasons for his determination" [*Id.* ¶ 129].  But both Plaintiff's salary and employment appear to be ultimately determined "by UTK's Office of the Provost" [*See id.* ¶¶ 129, 123].

Plaintiff filed suit in November 2024 [Doc. 1].  After filing his initial complaint, Plaintiff amended once as a matter right. *See* Fed. R. Civ. P. 15(a)(1).  On February 7, 2025, Plaintiff filed the operative First Amended Complaint [Doc. 7].

The First Amended Complaint raises claims against UT; "The University of Tennessee Foundation, Inc;" and Mazer and Childers, both in their "official and individual capacities" [*Id.* at 3-4].  At its core, the First Amended Complaint complains that Defendants engaged in an "unfair and discriminatory pressure campaign" to "secure Brotman's involuntary resignation and retirement from the University" [*See id.* ¶ 132 ].  As relevant here, the First Amended Complaint raises (1) a breach of contract claim against UT (Count One) (2) "Violation[s] of the OWBPA" against Defendants UT (Count Three); (3) a claim under the Age Discrimination in Employment Act ("ADEA") against Defendant UT (Count Four); (4) a claim under the Americans with Disabilities Act ("ADA") against Defendants Mazer and Childers (Count Five);

4

and (5) claims for "Denial of Due Process of Law" in violation of the "Fourteenth Amendment" against Defendants Mazer and Childers (Count Six and Seven) [*Id.* at 36-40]. The First Amended Complaint seeks only "[m]oney damages" as relief for each claim [*Id.* at 39-40].

Defendants UT, Mazer, and Childers (the "Moving Defendants") jointly filed a "Motion to Dismiss" [Doc. 15]. They seek dismissal of the claims against them under Federal Rule of Civil Procedure 12(b)(1) based on sovereign immunity and Rule 12(b)(6) for failure to state a claim, as applicable [*See* Doc. 15].

Plaintiff filed a Response[1] [Doc. 24]. In the Response, Plaintiff did not address the portion of the Motion seeking dismissal of Plaintiff's "Due Process" claims (Counts Six and Seven) [*See* Doc. 24]. As to the OWBPA claim (Count Three), Plaintiff argues that his OWBPA claim is "separate and distinct" from his ADEA claim (Count Four) but does not otherwise grapple with whether the OWBPA creates a separate cause of action under the law or facts here [*See id.* at 10-11]. Plaintiff argues that the remainder of the First Amended Complaint should survive the Motion, but "[i]f the Court rules otherwise, however, the Plaintiff would request the Court to grant leave to file an amended Amended Complaint to satisfy any legal pleading requirements" [*See id.* at 8]. But Plaintiff did not file a motion seeking leave to further amend his

---

[1] As an initial matter, Plaintiff asks the Court to "exercise its discretion by striking the Defendants' Motion" based on perceived deficiencies in the meet-and-confer process [*See* Doc. 24 at 5, 2-4]. The Court generally orders Parties to "meet and confer prior to the filing of a motion to dismiss" [*See* Doc. 4]. But even under Plaintiff's view of the facts, the Moving Defendants "emailed the Plaintiff" before filing the Motion "to determine whether a Rule 12(b) motion can be avoided by the filing of an amended pleading on your [Plaintiff's] part" [*See* Doc. 24 at 2]. Plaintiff declined the offer "to file an Amended Complaint based on the Defendants' demand" [*See id.*]. This satisfied the Court's meet-and-confer requirement. So, the Court declines to strike the Motion.

First Amended Complaint or a proposed second amended complaint; Local Rule 15.1 requires both. *See* E.D. Tenn. L.R. 15.1.[2] Moving Defendants replied [Doc. 27].

Approximately nine (9) months later, Plaintiff filed a Motion to Amend with a Proposed Second Amended Complaint [*See* Doc. 34]. Substantively, the Proposed Second Amended Complaint would amend the First Amended Complaint to add (1) Defendants Mazer and Childers to the ADEA claim, [*see* Doc. 34 ¶ 172]; (2) a claim against UT for "Unlawful Retaliation For Filing A Lawsuit," presumably under the ADA or ADEA, [*see id.* ¶¶ 174-175]; and (3) Defendant UT to the ADA claim, [*see id.* ¶ 176]. Moving Defendants opposed amendment, arguing that the Proposed Second Amended Complaint would be futile [Doc. 35].

Plaintiff replied [Doc. 36]. In the Reply, he asserted for the first time that he "is seeking prospective injunctive relief rather than retroactive money damages" [*See* Doc. 36 at 3]. And he declares that "Plaintiff's Motion to Amend [Doc. 34] is modified, as follows" [*Id.*]. What follows is various directions that certain numbered paragraphs "should note as an addition," "should be deleted," or "should state only" particular text [*See id.* at 3-4]. But the references do not match up to paragraphs in the Proposed Second Amended Complaint [*Compare* Doc. 36 at 3-4 *with* Doc. 34]. And again, Plaintiff did not file a motion for leave to file a further amended complaint or a proposed third amended complaint, as Local Rule 15.1 requires. *See* E.D. Tenn. L.R. 15.1.

---

[2] To the extent this could be viewed as an attempt to amend, courts "refrain[] from applying [the] liberal policy of amendment" in Rule 15 where a plaintiff makes "only a cursory request for relief and fail[s] to attach a copy of a proposed amended complaint." *Mitchell v. City of Benton Harbor, Mich.*, 137 F.4th 420, 442 (6th Cir. 2025) (citations omitted). Local Rule 15.1 echoes this reality, requiring more. *See* E.D. Tenn. L.R. 15.1. As the Sixth Circuit has recognized, "a district court may deny leave to amend when the plaintiff 'neither moved formally to amend nor proffered a proposed amended complaint.'" *Forrester v. Am. Sec. & Pro. Serv. LLC*, No. 21-5870, 2022 WL 1514905, at *4 (6th Cir. May 13, 2022) (quoting *United States ex rel. Owsley v. Fazzi Assocs., Inc.*, 16 F.4th 192, 197 (6th Cir. 2021)). The Court does so here, given Plaintiff's failure to comply with Local Rule 15.1 or even attempt to describe the changes he would make in a further amendment.

6

## II.     <u>**Moving Defendants' Motion To Dismiss**</u>

This puzzle is best solved by starting with Moving Defendants' Motion to Dismiss [Doc. 15]. Under Rule 12(b)(1), the Court must dismiss a claim if the Court lacks subject matter jurisdiction to hear it. Defendant UT lodged a "facial" attack on the Court's jurisdiction to hear Counts One and Four [*See* Doc. 16 at 5-7, 10]. So, for the purposes of that argument, the Court "accepts" the facts in the First Amended Complaint "as true" and construes them "in the light most favorable to" Plaintiff. *See Am. Reliable Ins. Co. v. United States*, 106 F.4th 498, 504 (6th Cir. 2024) (citation omitted). Then, the Court assesses whether the facts "assert[] a 'plausible claim'" of jurisdiction. *See Assoc. of Am. Physicians & Surgeons v. U.S. Food and Drug Admin.*, 13 F.4th 531, 544 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Under Rule 12(b)(6), the operative complaint must plead "enough facts to state a claim to relief that is plausible on its face." *See Phillips v. DeWine*, 841 F.3d 405, 414 (6th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024). A claim is plausible if the complaint includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Teamsters Local 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524 (6th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678).

### A. The Court Dismisses Counts One And Four Without Prejudice For Lack Of Jurisdiction.

The Court lacks jurisdiction over Counts One and Four Against Defendant UT. The "sovereign immunity guaranteed by" the Eleventh Amendment "deprives federal courts of subject matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (citation omitted). "Unless immunity is removed, individuals cannot seek

7

monetary damages or retrospective relief" from the State. *Stanley v. W. Michigan Univ.*, 105 F.4th 856, 863 (6th Cir. 2024) (cleaned up). This jurisdictional bar generally extends to "entities acting on behalf of the state." *Id.* (quoting *Ashford v. Michigan*, 89 F.4th 960, 969 (6th Cir. 2024)). Defendant UT is an arm and alter ego of Tennessee "and thus enjoys sovereign immunity." *See Rives v. Univ. of Tenn.*, No. 24-5336, 2024 WL 5103829, at *3 (6th Cir. Dec. 13, 2024) (collecting cases).

Conceptually, sovereign immunity would generally bar Plaintiff's breach of contract claim against UT, an arm of the State, (Count One) seeking monetary damages. Tennessee, however, gives parties a limited "opportunity" to file "causes of action for money damages against the state" that would otherwise be barred by sovereign immunity. *See Setayesh v. Tydings*, No. 3:18-CV-00335, 2019 WL 1460882, at *3 (M.D. Tenn. Apr. 2, 2019); Tenn. Code Ann. § 9-8-307(a). But within that waiver of immunity, the state gave the Tennessee Claims Commission "exclusive jurisdiction to determine all monetary claims against the [S]tate," including claims for breach of contract. *See Laude v. Knowles*, 549 F. App'x 311, 312 (6th Cir. 2013); Tenn. Code Ann. § 9-8-307(a)(1)(L); *Setayesh*, 2019 WL 1460882, at *3; *Johnson v. Tennessee*, No. 220CV02581TLPATC, 2021 WL 1823115, at *8 (W.D. Tenn. May 6, 2021). So, the State has not waived immunity and consented to suit for breach of contract in federal court. *See Johnson*, 2021 WL 1823115, at *8. Therefore, this Court lacks jurisdiction to hear Count One, and the Court dismisses Count One without prejudice.

Moving to Count Four, sovereign immunity generally bars a suit seeking monetary damages against a State under the ADEA. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 79 (2000); *see also Latham v. Off. of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005). As above, Defendant UT is an arm and alter ego of the state of Tennessee. *See Rives*, 2024 WL 5103829,

at *3. And there is no evidence that Tennessee has waived immunity in this context. So, the Court lacks jurisdiction to hear Count Four, and the Court dismisses Count Four without prejudice.

**B. The Court Dismisses Count Three For Failure To State A Claim.**

The First Amended Complaint fails to state a claim under the OWBPA against Defendant UT. The OWBPA is a 1990 amendment to the ADEA that, as relevant here, imposes specific requirements that an employer must meet before an employee could validly waive or release an ADEA claim. *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426-27 (1998) ("An employee 'may not waive' an ADEA claim unless the waiver or release satisfies the OWBPA's requirements"); *see also Howlett v. Holiday Inns, Inc.*, 120 F.3d 598, 600 (6th Cir. 1997).

The theory of liability in the First Amended Complaint appears to be that Defendant UT "violated" the OWBPA because one or more of the retirement packages sent to Plaintiff failed to meet some of the OWBPA's requirements [*See* Doc. 7 ¶¶ 90, 100, 110]. Moving Defendants argue that the OWBPA does not provide an independent cause of action separate from an ADEA claim and that in any event, the First Amended Complaint does not state an OWBPA because Plaintiff "never signed a waiver agreement" that could be viewed as waiving or releasing any ADEA claim [*See* Doc. 16 at 8-9]. Plaintiff does not argue that the OWBPA creates a separate cause of action, instead he argues that his OWBPA claim is separate from his ADEA claim [*See* Doc. 24 at 10-11]

The Sixth Circuit has not squarely answered whether the OWBPA created an independent cause of action separate from the ADEA. But this Court has doubts. *See Oubre*, 522 U.S. at 427 ("OWBPA governs the ***effect*** under federal law of waivers or releases ***on ADEA claims***." (emphasis added)); *see also Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1191-1192 (10th Cir. 1999) (noting that *Oubre* "strongly indicates that the OWBPA simply determines whether an employee has . . . waived the right to bring a[n] . . . ADEA claim" and does not provide

9

"a separate cause of action"); *Williams v. Gen. Motors Corp.*, 901 F. Supp. 252, 254 (E.D. Mich. 1995); *Baker v. Washington Group Int'l, Inc.*, 2008 WL 351396, at *2 (M.D. Pa. Feb. 7, 2008). And even if there could be a separate cause of action for violating the OWBPA, Plaintiff fails to substantively defend any standalone OWBPA claim. By failing to defend any standalone OWBPA claim, Plaintiff abandons it. *See Ciena Healthcare Mgmt., Inc. v. Hartford Fire Ins. Co.*, 686 F. Supp. 3d 625, 635-36 (N.D. Ohio 2023) ("A party waives opposition to an argument by failing to address it in their responsive brief" (cleaned up)); *see also* E.D. Tenn. L.R. 7.2. In the end, the First Amended Complaint also fails to state any facts on which the Court could infer a claim for violation of the OWBPA based on the offered but not accepted retirement packages, separate from Plaintiff's ADEA claim (which he did not waive or release) [*See* Doc. 7]. So, the Court dismisses Count Three for failure to state a claim.

### C. The Court Dismisses Count Five For Failure To State A Claim.

The First Amended Complaint fails to state a claim against Defendants Mazer or Childers, in their official or individual capacities, under the ADA (Count Five). In their official capacities as employees of UT, Defendants Mazer and Childers are generally entitled to dismissal of the ADA claim raised against them because "they enjoy Eleventh Amendment [Sovereign] immunity." *See Stanley*, 105 F.4th at 863. Resisting this conclusion, Plaintiff argues that he brings his claim under Title II of the ADA, [*see* Doc. 24 at 13], where immunity has been abrogated in some circumstances, *see United States v. Georgia*, 546 U.S. 151, 158-159 (2006). But the First Amended Complaint negates that argument. Title I of the ADA, not Title II, "cover[s]" "discrimination against persons with disabilities" in "employment." *See Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). The First Amended Complaint raises a Title I claim tied to Plaintiff's "employment" at UT [*See* Doc. 7 ¶ 143 (basing claim on purported failure to provide "an equal opportunity to benefit from the full range of employment opportunities available to others"). The First Amended

10

Complaint simply does not raise or implicate Title II, which prohibits discrimination in the provision of "public services, programs, and activities." *See Lane*, 541 U.S. at 516-17. So, the official capacity claim against Defendants Mazer and Childers fails.

The individual capacity claim fails too. Title I of the ADA makes it unlawful for a "covered entity," including an "employer," to discriminate. *See* 42 U.S.C. §§ 12112(a), 12111(2). But, as relevant here, an individual who does not meet the definition of an "employer" cannot be liable under the ADA. *See Stanley*, 105 F.4th at 864. Plaintiff "recogniz[es]" the general proposition "that individuals cannot be sued under the ADA" [Doc. 24 at 16]. And the First Amended Complaint does not include sufficient facts for the Court to infer that either Mazer or Childers qualifies as Plaintiff's "employer" under the ADA [*See* Doc. 7]. *See Stanley*, 105 F.4th at 864. As just one example, "merely" supervising an employee does not make an individual an "employer." *See Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 362 (6th Cir. 2001) (Title VII); *see also Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586, 601-02 (E.D. Mich. 2016), *aff'd*, No. 16-1103, 2016 WL 11854487 (6th Cir. Nov. 3, 2016) ("the closest any of [defendants] comes to liability under Plaintiff's ADA claim is that some of them may have supervised her during her employment at Oakland University . . . However, even that is an insufficient connection to provide for individual liability"). Accordingly, the Court dismisses Count Five.

### D. The Court Dismisses Counts Six And Seven Because Plaintiff Waived Any Opposition To Dismissal.

Finally, Plaintiff waived any opposition to dismissal of Counts Six and Seven by failing to address these claims in his Response and by failing to oppose Moving Defendants' Motion on these claims. *First*, by failing to address dismissal of Counts Six and Seven in his Response, Plaintiff waived any argument against dismissal. *See Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008). *Second*, and independently, under Local Rule 7.2, the Court may

deem a failure to respond to a motion "a waiver of any opposition to the relief sought." E.D. Tenn. L.R. 7.2. It is appropriate to do so here. And this provides an independently-sufficient basis to dismiss Counts Six and Seven grounded in the decisions Plaintiff made in briefing the Motion to Dismiss. *See id.* Accordingly, the Court dismisses Counts Six and Seven.

## II.     The Court Denies Plaintiff's Request To Further Amend.

This leaves Plaintiff's Motion to Amend [*See* Doc. 34]. The Court denies that request. Where, as here, a party has already amended once as a matter of right and the time to amend under Rule 15(a)(1) has expired, a party "may amend its pleading only with the opposing party's written consent or the court's leave." *See* Fed. R. Civ. P. 15(a)(2). The opposing Parties have not consented to further amendment, [*see* Doc. 35], so the Court's leave is required, *see* Fed. R. Civ. P. 15(a). Courts "should freely give leave" to amend "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). But the Court may deny a motion to amend if the amendment would be "futile." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024) (citation omitted). Amendment would be futile if "after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'" *Id.* (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).

Each of the three substantive amendments offered in the Proposed Second Amended Complaint would be futile [*See* Doc. 34 ¶¶ 172, 174-76]. ***First***, any ADEA claim against Defendants Mazer and Childers would fail because (1) they are each entitled to sovereign immunity in their official capacities, just as UT is in the analysis of Count Four above, and (2) in their personal capacities, neither would qualify as an "employer" under the ADEA, just as neither qualifies as an "employer" under the ADA in the analysis of Count Five above, *see Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404 n.6 (6th Cir. 1997) (noting that the ADA and ADEA use "essentially

12

the same" definition for "employer").  **Second**, a claim for "unlawful retaliation" against UT seeking monetary damages, whether brought under the ADA or ADEA, would be futile because sovereign immunity would bar the claim.  *See Stanley*, 105 F.4th at 865-66 (ADA); *Latham*, 395 F.3d at 270 (ADEA).  **Third**, sovereign immunity would bar an ADA claim against Defendant UT seeking monetary damages for the same reasons that any official-capacity claim against Mazer and Childers fails as analyzed in Count Five above.

*Finally*, Plaintiff's declaration in his Reply that "Plaintiff's Motion to Amend [Doc. 34] is modified" is both too little and too late [*See* Doc. 36 at 3].  It is too little because it (1) failed to comply with Local Rule 15.1 and caselaw requiring a motion and proposed amended complaint, *see Forrester*, 2022 WL 1514905, at *4 ("a district court may deny leave to amend when the plaintiff 'neither moved formally to amend nor proffered a proposed amended complaint'" (quoting *Fazzi Assocs.*, 16 F.4th at 197)), and (2) was so disjointed and untethered to the Proposed Second Amended Complaint [Doc. 34] it purported to modify that the Court was left unable to identify and assess Plaintiff's precise intended changes, *see, e.g.*, *HBKY, LLC v. Elk River Exp., LLC*, 150 F.4th 480, 488 (6th Cir. 2025) ("Judges are not like pigs, hunting for truffles buried in the record" (quoting *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024))).  And it is too late, asserted for the first time in a Reply after over nine (9) months of litigation.  *See Grand v. City of Univ. Heights, Ohio*, 159 F.4th 507, 516 (6th Cir. 2025) ("arguments made for the first time in a reply brief are forfeited" (citation omitted));  *Prater v. Ohio Educ. Ass'n,* 505 F.3d 437, 445 (6th Cir. 2007) (affirming denial of leave to amend where plaintiff "had sufficient information to" bring additional claims "long before" filing).  Accordingly, the Court Denies Plaintiff's Motion for Leave to Amend [*See* Doc. 34].

## III.    Conclusion

For the above reasons, the Court **GRANTS** the Motion to Dismiss filed by Defendants the University of Tennessee, Joseph Mazer, and Courtney Childers [Doc. 15] and **DENIES** Plaintiff Stuart N. Brotman's Motion to Amend [Doc. 34].

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge

14